If I may, Your Honor, I'd like to reserve two minutes of my time for rebuttal. May it please the Court, Gary Sussman, appearing before the United States. On July 15, 2004, defendant Christopher Michael Pike walked into a Wells Fargo bank and handed a teller a note which read, Give me all the money. I have a gun. No bullshit. He walked out with $4,495 in his black backpack, and included in that money were bait bills and an electronic tracking device. About a half an hour after the robbery, Portland police officers tracking the signal from that device located, stopped, and arrested the defendant. And in his backpack, they found the money taken during the robbery, what was left of it, the bait bills, the tracking device, and a gun. Those facts are undisputed. Yet, despite those undisputed facts, the district court, applying an incorrect standard of proof, misapplied the sentencing guidelines. It was a standard that the government said would be appropriate. The government argued for a preponderance of the evidence, Your Honor. But it said, didn't the government say either a preponderance of the evidence or it said at least no more than clear and convincing? The defendant was arguing for proof beyond a reasonable doubt. The government said a preponderance of the evidence or at most clear and convincing evidence. Though it certainly was a standard the government told the court would have been accepted. It wouldn't have said that, at least clear and convincing, that it was a robbery. The government did argue for preponderance of the evidence or alternatively and at most clear and convincing evidence. And that was the standard that the court applied. But the court— Before you get—before you—I don't know if you're going to discuss the standard any further or not, but if so, before you do that now, give me a little more of the facts about, you know, when—you say he was discovered about a half hour later, right? That's correct. You know, how far away was he? What were the circumstances? And, you know, is there anything more you can tell us about that? Yes. The police were following the signal emitted by the tracking device. After the robbery— For a half hour? It took them a while to catch up to him because after the robbery, Mr. Pike— He was on—was he on a bicycle? He made his immediate flight from the bank on a bicycle to a car parked nearby in a parking lot. He'd abandoned the bicycle, got into his car, and drove away. When do you think—when do you say nearby what? A few blocks? I would say within a half a mile. Okay. Go ahead. He got into his car and drove away. As he's driving toward—from North Portland, which is where Jansen Beach is, to Southeast Portland, near in Southeast Portland, which is where the police stopped him, they're triangulating on the signal, they're closing in on him. He stops in the meantime and uses part of the proceeds from the bank robbery to pay rent at his landlord's credit union. He comes out of the credit union, gets back in the car, and very shortly thereafter is stopped by the police. Is that—was that entire sequence of events, in your view, part of flight from the robbery? Was that part of the same event, or was that—once he stopped and started spending the money, did that end the flight portion of the robbery? No, it did not. I don't think it—I don't think flight ended when he left the bank on the bicycle. I don't think flight ended— He went down to a bar and had a few drinks and spent a part of the proceeds there, and then got in his car and went home. Would that have interrupted the flight? No, I don't believe it would have, if that had been within that same short timeframe immediately after the robbery. I mean, certainly immediate flight's going to end sometime. What's the standard? How do we know when it ended? The reason I'm asking is it seems to me that if—the gun clearly was found at the time of the arrest, and if the arrest occurred during the totality of the robbery and flight from the robbery, then it was there, but then the question is, was it part of the flight? And that's the question that I'm trying to focus on. There isn't a bright-line test that either this Court or any other Court has enunciated as to precisely when immediate flight ends. It's necessarily a fact-specific inquiry. And I would submit, Your Honor, that under the facts of this case, where he left the bank, went directly back to his car, got into his car, was driving back, and within a half an hour was stopped and arrested by the police, that he was still in the immediate flight from the bank. Did the district court make a finding on which it relied in sensing that he was still in flight? Yes, the district court did, Your Honor. On page 141 of the excerpt of record, the district court said, after finding that there was insufficient evidence under a clear and convincing standard that he had the gun in the bank with him, said — What was that, 151? 141, Your Honor. 141. Go ahead. It said that when he was arrested, the fact that he had the gun in his backpack when he was arrested immediately after the robbery is sufficient to constitute the possession part, although he did not brandish the gun. Those were the findings of the district court. In other words, the district court found that he had the gun in the backpack at the time of his arrest immediately after the robbery, and that was sufficient in the district court's mind to constitute possession under the guidelines. Yet despite that finding, the district court did not apply the enhancement, and that, Your Honors, was error. Of course, you could say it's error to say he was arrested immediately after the robbery because he wasn't. The backpack was not challenged by the defendant. So the district court made its finding, and it's where its judgment lies. Well, there's — let me ask you something else about that paragraph, because there was something else about that paragraph that I found interesting. The court either found or assumed, I'm not sure which it is, that the gun was in the car during the period of time that he was engaged in the robbery. I assume she means there in the bank. Is that a finding? What is that? Well, Your Honor, that stems from the defendant's own statements to the FBI following his arrest. He submitted committing the bank robbery when he was interviewed, but he claimed that he had left the gun in the car during the robbery. Now, the government questioned whether the court should believe that self-serving statement, given the fact that the defendant had given the conviction teller a note that said, I have a gun. He was seen rummaging around in the backpack just before the robbery, and the gun was found in the backpack along with the money taken during the robbery. We would think he was looking for the gun. It was there. He wouldn't have taken it out. Perhaps, or perhaps not. I don't see where rummaging around helps you. You know, if he hadn't opened the backpack, you could say, well, sure, the gun was in the backpack, but he never needed it. But I don't see how it helps your argument to say that he looked around in the backpack during the robbery and didn't take out the gun. Well, not all bank robberies who commit robberies while armed show the gun. In this case, no. No, they don't. I just don't understand how rummaging around helps your case. Why you're better off than if he hadn't rummaged around. I don't think, well, I'm not sure it makes a difference one way or the other. I mean, he told the victim teller he had a gun. There was, in fact, a gun in the backpack. Mr. Chessman, let me then get back to the proper burden of proof. Does it make a difference in this case, you know, when we review for error on, you know, the district court's finding that he didn't have the gun during the robbery, whether it's preponderance, recurring convincing? Does it make a difference in this case? It may make a difference as to whether or not he had the gun in the bank, because I would submit that, at the very least, there was a preponderance of the evidence that he had the gun with him in the bank. However, if the court finds, as the district court did— No, no, no. Just a minute, though. I mean—well, go ahead. I'm sorry. Go ahead. If the court — if this court finds, as the district court did, that he — that his possession of the firearm immediately after the robbery, at the time of his arrest, was sufficient to constitute possession, then you're right, Judge Kosima. No, it doesn't matter, because even under a clear and convincing evidence standard, those are the district court's findings, and he erred as a matter of law by not applying them. Well, if — okay. That's fine. In the alternative, the district court clearly erred by not applying the two-level enhancement for making a threat of death. Under this court's decision in Jennings, which, of course— When you say in the alternative, I notice you use that same language. Wait. Does that mean you'd be satisfied with either one? No. What that means is if you find the five-level enhancement applies, then you don't ever reach the two-level enhancement for making a threat of death, because the way the guideline is set up, they're phrased in the alternative, and it's a decreasing scale of seriousness. So the more serious enhancement applies, you don't also pile on a second enhancement for making a threat of death. So even assuming that the district court was correct in its findings and its holdings on the five-level enhancement, which, of course, the government does not believe was the case, the district court clearly erred by not applying the two-level enhancement under this court's decision in Jennings. Now, granted, the district court did not have the benefit of Jennings at the time of the sentencing hearing, but the government did cite to the district court a solid wall of authority from no fewer than nine other courts of appeal. I'll save the rest of my time for rebuttal. Thank you, Your Honor. May it please the Court. Nancy Ferguson representing Mr. Pike in this appeal. Your Honors, the trial court's findings and conclusions in all regards should not be disturbed in this case. The five-level increase was inappropriate based on both the facts and the law. The government's expansion of this guideline... Well, but before we get to that, don't we have to resolve whether the district court should have applied the preponderance of the evidence? Because that may have changed, you know, the findings that he would have made. Your Honor, under any standard, this guideline enhancement should not have been applied. This one, you're talking about the five-level? Yes. You don't think an inference can be drawn on the preponderance of the evidence basis that he possessed a gun? I mean, the fact that it was in the backpack seems to me almost standing by itself enough from which to infer that he had the backpack on in the bank, so the backpack, the gun was in the backpack while he was in the bank. The court clearly found that he did not. Well, the reason, that's why I say, but that's under clear and convincing. Well, counsel, I would, I'm not sure the court actually made a finding. The court said that the burden of proof had not been carried, which is different than making a finding of the negative. But let me ask you a different question that concerns me, and that is, again, about flight. Let's assume, just for the purpose of forwarding my thought process here, that he had been still on the bicycle when he was arrested, that he clearly was, you know, peddling away from the bank, and they got him two blocks later. Would that, in your view, be part of a robbery? I think that's a much closer case, and I think the argument there is that if it is during direct flight or hot pursuit, the immediate flight after a robbery, then there is at least a nexus between the possession of the weapon and the commission of the robbery. Is that a yes? Yes. Well, I think it wouldn't be any harm if you admit something that's pretty obvious. If the police are after him, I would say. Only if the police are after him, so if they happen upon him two blocks later? If they are, if there is pursuit, I think that there must be flight. Flight is a common sense word. Well, there was pursuit. So to have pursuit happen on someone does not... While he's running away, he's in flight still. There has to be a connection between what he has just done and what the people who are trying to catch him... Okay. But here's my problem with your position in this case. The trial court did find that he had the gun in the car. I think that's undisputed. And he said he had the gun in the car. So if he... And do you agree that it's less than half a mile between the... I don't agree. I don't think the record is clear. It was a distance away. It was an apartment complex that was a distance away. So I don't think there is finite evidence in the record about that precise distance. I suppose if we have the addresses, we can take judicial notice of the distance, but... I assume your position is that the flight occurred on the bicycle. If you're even willing to concede it was a flight, which I would if I were you, but that the flight ended with the bicycle trip, and the fact that the gun was in the car doesn't mean it was used for the robbery. Certainly. I'm not suggesting it's correct. I'm just saying that's your position. He drove the car to the rental agency. You know, the place where he does... Right. Yes. Okay. So he parked his car, drove to the bank on a bike... Yes. ...committed a robbery, drove back, fled to either his car, or fled to the car and continued the flight, one or the other. Does it make a difference whether the car was parked and used only to get to wherever the bike was? Is that still part of the robbery? Well, I think what Your Honor is articulating is the difficulty with the sort of slippery slope canyon that the government has proposed. Does flight extend? I mean, my position is that there's a break. There's clearly a break. This man is on a bike. He goes to his car. He then goes to a credit union and pays for the rent. This is a break. This is not how robbery works. Which is the break? That's what I'm trying to get you to focus on. Is the break getting into the car, which is what Judge Reinhart was asking you, or is the break going to the credit union and sort of stopping the movement away from the bank to do a completely different task? Which is the break? I don't have an answer for that. I think that the court has to look at what this notion of flight is and whether or not there is a nexus between what's happening with that car and law enforcement or bystanders and the offense itself. If you look to — just direct your attention to the case of Ashburn that I cited in the materials. It's another circuit. It's a dis-circuit case. But the court was trying to deal with whether or not the threat of death increase, admittedly a different increase but still the same sort of principles and analysis, whether or not the threat of death should be applied where the robber, as he exits the bank to bystanders that are not connected with the bank at all, not victims, says, you know, get out of here or you're going to die. And the court said, yes, we will apply the threat of death there because there is a nexus. There's a relationship between that threat and the commission of the bank robbery. And it seems to me that to extend flight to some temporal place later, to some spatial place later, whether it's not — to me it might make a difference because if the flight extended up to the time of the credit union, he possessed the gun. Well, let me say this. I think that the notion that — well, we need to look first at the guideline. And the guideline itself in the definition of possessed or brandished suggests that the gun needs to be present at the time of the robbery. So this whole notion of flight is a standard that's been injected by the government that is not within the confines of the guideline. You look directly at the guideline. What is it in the guideline that says it has to be in the bank? I'm sorry? What is it in the guideline that says it has to be in the bank? The guideline deals with a definition. The commentary refers the reader to 1B1.1, which defines brandish. Now, possession is not defined there, but under rules of statutory construction, look to the definition of brandish to determine what possessed means. And that guideline says that brandish means to display or that the presence is made known to the teller to intimidate, even if it's not visible. So it doesn't need to be visible. But it must be present. It must be there in the bank, which makes sense because otherwise we would take this definition that the government's proposed of possession and we would apply it to the other increases under the guideline. And there is a hierarchy of increase here for dangerous, for firearm is the most serious, you discharge and then you use it and then you possess or brandish it and then you go down to dangerous weapon. Under the government's theory, if I commit a bank robbery and I have a knife arguably in my car later or at home, I have now possessed a knife, a dangerous weapon, in the course of committing a bank robbery. And that's just simply preposterous. The notion that what you can have later at an unrelated location with utterly no nexus between that possession and the robbery itself and facilitating the robbery simply does not make sense. And it's a stretch of this guideline beyond what is intended. But there are a number of cases really that have incorporated flight, right, as part of the crime. Not in this guideline. No, but it doesn't have to be this guideline. You know, it's all the same principle. Well, in the definition of robbery, cases about what is a robbery, if you are in order to be complicit in a robbery, that's what the government cites. It's a case saying a person who is in the car afterwards and who discovers the robbery and helps in the getaway that is escaping from police in hot pursuit is part of the robbery. That makes sense. But that clearly is a flight. That's a pursuit. And these cases that deal with flight are in that context. Immediate flight afterwards. And that's simply not what you have here under any standard. This should not have been, this increase should not have been applied. And again. You have 10 seconds. Do you need to say a word about the second issue? Yes, I do. I think that the government, Your Honor, the trial court declined to apply a per se rule just like Jennings. The trial court essentially did what Jennings said. And there is a factual basis here for the trial court's declination to apply the enhancement. This should be reviewed only for clear error. What's the factual basis? The factual basis is that this was in the middle of July. The court had a picture of this robber, of my client. He had a floppy hat on. He looked sort of goofy. He did not look menacing. He had presented an open backpack that was clearly empty. Nobody saw anything inside of it. He did not, unlike Jennings, he did not say, I have a gun. He presented a note. And I think, I'm going to point this out to the court because I think there's What does that make? What if it said, don't move or I will shoot you dead, clearly threatening death. But he hands it, that's not a threat of death because he didn't say it out loud? In this case, it was not perceived as such. And I refer the court to excerpt of the record at 60, and also there's a footnote 56. My investigator interviewed the bank teller, and although it's not a subjective test, it's an objective test. What she had to say, this is the victim of the offense, was that the robber was very quiet, did not say much. What he did say, which is one thing, gives me the big money, he mumbled that he made no movement to suggest he was armed or that he was scary or that there was a gun, and she did not get the feeling he was going to hurt her. Now, these are her perceptions based on objective criteria and objective data. That's what the court had in front of it, a picture of the backpack, a picture of the robber in the bank, bank surveillance photos, her statement, the circumstances, and found factually in this context that the threat of death increase was not warranted. The court didn't refuse to do — did exactly what Jennings said to not do, which is don't decide as a matter of law that this always applies. And that's what the court did. That's what the court exactly said. The court did recognize at excerpt of the record 138, he did recognize that the Ninth Circuit has not said that I have a gun does not constitute a threat of death. He recognized I can go either way on this, and here's how I'm going to go here. I'm not — I'm unwilling to enunciate a rule of law that's going to direct the result, but I will find here contextual that this is. Thank you, counsel. The only thing you can assert from counsel about what the bank teller said and felt was not in the record and was not before the district court in any form other than her own conclusory statements and her sentencing letter. The victim teller didn't testify. There was no affidavit, no declaration. The investigator didn't testify, and nothing was submitted backing those claims up. And that's all beside the point anyways, because this Court in Jennings said it's an objective teller, not what the particular teller felt in the particular circumstances, but what an objective, reasonable teller would feel under the circumstances. And what Jennings said was that under ordinary circumstances, I have a gun is a threat of death, and the two-level enhancement applies. Absent some circumstances that deprive those words of their ordinary and expected meaning, I have a gun is a threat of death. Here, there were no circumstances identified either by defendant or by the district court that would rob those words of their meaning. The district court was aware of the wall of authority calling for the enhancement, but it chose instead to rely on an unpublished sentencing decision from another Oregon district judge who also incorrectly, under Jennings, refused to imply the enhancement. Now, as far as the five-level enhancement goes, there was a nexus here, and the nexus was the note that was given to the teller that said, I have a gun. I have a gun, and a gun was found in the backpack. So, yes, the standard of proof does matter. But having found that the gun was in the backpack during the immediate flight from the bank, the district court erred not as a matter of fact, but in legal application of the guidelines of not applying the enhancement. The district court erred not once, not twice, but in three separate respects. Now, each one of those, under this Court's decisions in Cantrell and Mix and Liles and other cases, say that where there has been a misapplication of the guidelines and that misapplication was material, as it was here, then this Court will vacate and remand for resentment. Any one of those errors of law would, on its own, be enough to mandate a remand in this case. But the three of them taken together compel one. Thank you, Judge. Thank you, Your Honor. The case case documents will be submitted. The United States v. Ellis was submitted on the briefs. The United States of America v. Washburn was submitted on the briefs. The United States of America v. Brazil was submitted on the briefs. The next case.
judges: Reinhardt, Tashima, Graber